Citation Nr: 1452644 
Decision Date: 11/28/14 Archive Date: 12/02/14

DOCKET NO. 14-33 618 ) DATE
 )
 )


THE ISSUE

Whether a July 21, 2010 decision of the Board of Veterans' Appeals (Board), denying service connection for disabilities of the neck and back should be revised or reversed on the grounds of clear and unmistakable error (CUE).


REPRESENTATION

Moving party represented by: Disabled American Veterans


ATTORNEY FOR THE BOARD

C. L. Krasinski, Counsel



INTRODUCTION

The Veteran, who is the Moving Party in this case, served on active duty from June 1976 to June 1979, and from November 1980 to June 1986.

In the July 21, 2010 decision, the Board determined that new and material evidence had been received to reopen the claim for service connection for disabilities of the neck and back and denied the claim for service connection on the merits. 

This matter comes before the Board of Veterans' Appeals (the Board) based on an April 2013 motion filed by the Moving Party which sought a revision of the July 21, 2010 Board decision on the basis of clear and unmistakable error. See 38 U.S.C.A. § 7111 (West 2002); 38 C.F.R. § 20.1400 et seq. (2014).


FINDINGS OF FACT

1. In a July 21, 2010 decision, the Board determined that new and material evidence had been received to reopen the claim for service connection for disabilities of the neck and back and denied the claim for service connection on the merits.
 
2. The correct facts, as they were known at the time of the July 21, 2010 decision were before the Board, and the statutory and regulatory provisions extant at the time, were correctly applied.

3. To the extent any error was committed in the Board's July 21, 2010 decision, the record does not reflect that had it not been made it would have manifestly changed the outcome.



CONCLUSION OF LAW

The July 21, 2010 decision in which the Board determined that new and material evidence had been received to reopen the claim for service connection for disabilities of the neck and back and denied the claim for service connection does not contain clear and unmistakable error. 38 U.S.C.A. § 7111; 38 C.F.R. §§ 20.1400, 20.1403, 20.1404 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSION

Initially, the Board notes that the duties to notify and assist are not applicable to clear and unmistakable error (CUE) claims. See Livesay v. Principi, 15 Vet. App. 165, 178-79 (2001) (en banc). 

The Board finds that the arguments advanced by the Moving Party allege CUE with the requisite specificity. See 38 C.F.R. § 20.1404(b). 

1. CUE Law and Regulations

Under 38 U.S.C.A. § 7111, the Board has the authority to revise a prior Board decision on the grounds of CUE. A motion in which review is requested based on CUE in a Board decision may be filed at any time after the underlying decision is rendered. 38 U.S.C.A. § 7111; 38 C.F.R. § 20.1400.

CUE a very specific and rare kind of error, of fact or law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Generally, either the correct facts, as they were known at the time, were not before the Board, or the statutory and regulatory provisions extant at the time were incorrectly applied. 38 C.F.R. § 20.1403(a); see Fugo v. Brown, 6 Vet. App. 40, 43 (1993).

To warrant revision of a Board decision on the grounds of CUE, there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome of the decision. If it is not absolutely clear that a different result would have ensued, the claimed error cannot be deemed clear and unmistakable. 38 C.F.R. § 20.1403(c). 

Examples of situations that are not CUE are: (1) a new medical diagnosis that "corrects" an earlier diagnosis considered in a Board decision; (2) a failure to fulfill VA's duty to assist the claimant with the development of facts relevant to his or her claim; or (3) a disagreement as to how the facts were weighed or evaluated. 38 C.F.R. § 20.1403(d). See also Luallen v. Brown, 8 Vet. App. 92, 95 (1995). Similarly, the mere misinterpretation of facts does not constitute CUE. Thompson v. Derwinski, 1 Vet. App. 251, 253 (1991). 

CUE also does not encompass the otherwise correct application of a statute or regulation where, subsequent to the Board decision challenged, there has been a change in the interpretation of the statute or regulation. 38 C.F.R. § 20.1403(e).

A review for CUE must be based on the record and the law that existed at the time the decision was made. 38 C.F.R. § 20.1403(b)(1); see also Russell v. Derwinski, 3 Vet. App. 310, 313-14 (1992). Subsequently developed evidence may not be considered in determining whether error existed in the prior decision. Porter v. Brown, 5 Vet. App. 233, 235-36 (1993).

1. Law and Regulations in effect at the time of the July 21, 2010 Board decision

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326(a) (2009). 

When VA receives a complete or substantially complete application for benefits, it is required to notify the claimant and his representative, if any, of any information and medical or lay evidence that is necessary to substantiate the claim. 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The United States Court of Appeals for Veterans Claims (Court) held that VA must inform the claimant of any information and evidence not of record (1) that is necessary to substantiate the claim; (2) that VA will seek to provide; and (3) that the claimant is expected to provide. Quartuccio v. Principi, 16 Vet. App. 183 (2002). This notice should generally be provided prior to an initial decision on a claim by the agency of original jurisdiction (AOJ). Mayfield v. Nicholson, 444 F.3d 1328 (Fed. Cir. 2006); Pelegrini v. Principi, 18 Vet. App. 112 (2004) (Pelegrini II). 

In Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490 (2006); the Court observed that a claim of entitlement to service connection consists of five elements: (1) veteran status; (2) existence of a disability; (3) a connection between the veteran's service and the disability; (4) degree of disability; and (5) effective date. See 38 U.S.C. § 5103(a). Compliance with the first Quartuccio element requires notice of these five elements. See id. 

VA has a duty to assist the veteran in the development of his/her claim. See 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. This duty includes assisting him/her in obtaining service treatment records and reports of relevant post service medical care, as well as providing an examination or obtaining a medical opinion when such is necessary to make a decision on the claim. See id.

The duty to assist also includes providing a medical examination or obtaining a medical opinion when such is necessary to make a decision on the claim, as defined by law. See 38 U.S.C.A. § 5103A; 38 C.F.R. §§ 3.159(c)(4), 3.326(a); McLendon v. Nicholson, 20 Vet. App. 79 (2006). To that end, when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate. Barr v. Nicholson, 21 Vet. App. 303, 312 (2007). 

Under 38 U.S.C.A. § 5108 (West 2002), VA may reopen a previously and finally disallowed claim when "new and material" evidence is presented or secured with respect to that claim. "New evidence" means evidence not previously submitted to agency decision makers, and "material evidence" means existing evidence that, by itself or when considered with previous evidence of record, relates to an unestablished fact necessary to substantiate the claim. 38 C.F.R. § 3.156(a) (2009). The new and material evidence can be neither cumulative nor redundant of the evidence of record at the time of the last prior final denial of the claim sought to be reopened, and must raise a reasonable possibility of substantiating the claim. Id. 

The provisions of 38 U.S.C.A. § 5108 require a review of all evidence submitted by or on behalf of a claimant since the last final denial on any basis to determine whether a claim must be reopened. See Evans v. Brown, 9 Vet. App. 273, 282-3 (1996).

For the purpose of establishing whether new and material evidence has been submitted, the credibility of the evidence is to be presumed, unless it is inherently false or untrue or, if it is in the nature of a statement or other assertion, it is beyond the competence of the person making the assertion. Duran v. Brown, 7 Vet. App. 216, 220 (1994); Justus v. Principi, 3 Vet. App. 510, 513 (1992). 

Service connection may be established for a disability resulting from disease or injury incurred in or aggravated by active service. 38 U.S.C.A. § 1131. For the showing of chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time. 38 C.F.R. § 3.303(b). If chronicity in service is not established, a showing of continuity of symptoms after discharge is required to support the claim. Id. Service connection may be granted for any disease diagnosed after discharge, when all of the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). 

In order to establish service connection for the claimed disorder, there must be competent and credible evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999).

In order to establish service connection for the claimed disorder on a direct basis, there must be competent evidence of (1) a current disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a nexus between the claimed in-service disease or injury and the current disability. See Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2006). The determination as to whether these elements are met is based on an analysis of all the evidence of record and the evaluation of its credibility and probative value. See Baldwin v. West, 13 Vet. App. 1, 8 (1999). 

In addition, where a veteran served continuously for 90 days or more during a period of war, or during peacetime service after December 31, 1946, service connection for arthritis may be established on a presumptive basis by showing that the disease manifested itself to a degree of 10 percent or more within one year from the date of separation from service. 38 U.S.C.A. §§ 1101, 1112, 1113 (West 2002 & Supp. 2009); 38 C.F.R. §§ 3.307; 3.309(a) (2009). This presumption is rebuttable by affirmative evidence to the contrary. 38 C.F.R. § 3.307(d).

When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the Veteran. 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102. 

In Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990), it was observed that "a Veteran need only demonstrate that there is an 'approximate balance of positive and negative evidence' in order to prevail." To deny a claim on its merits, the preponderance of the evidence must be against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

3. Analysis

The Moving Party contends that the Board committed CUE in its July 21, 2010 Board decision when it denied entitlement to service connection for back and neck disabilities. The Moving Party asserts that the Board incorrectly applied the regulatory and statutory provisions as defined in 38 C.F.R. § 3.307, presumptive service connection; 38 C.F.R. § 3.159(a) and (c)(4), duty to notify and assist; 38 C.F.R. § 3.156, new and material evidence; and 38 C.F.R. § 3.102, reasonable doubt. See the April 2013 Motion. 

The Board has reviewed the record as it existed at the time of the July 21, 2010 decision in light of the law and regulations then in effect. As will be discussed in detail below, the Board finds that the July 21, 2010 decision was consistent with the law and regulations in effect at that time. The correct facts as they were known at the time were before the adjudicators, and the Board correctly applied the statutory and regulatory provisions. The Board finds that the July 21, 2010 decision was supported by the evidence of record at that time and was a reasonable exercise of adjudicatory judgment. To the extent any error was committed in the Board's July 21, 2010 decision, the record does not reflect that had it not been made it would have manifestly changed the outcome.

In the July 21, 2010 decision, the Board found that the September 2003 rating decision in which the RO continued the previous denials of service connection for residuals of a back and neck injuries was final. The Board further found that additional evidence received since the September 2003 rating decision, specifically a June 2009 private medical opinion, was new and material evidence. The Board indicated that the July 2009 private examination report stated that the Moving Party's current back condition was "reasonably related" to his in-service motor vehicle accident. The Board found that this evidence was not submitted at the time of the prior final denial of his claim, and was new to the file. The Board further found that the evidence related to previously unestablished facts necessary to substantiate the Moving Party's claim, as it shows that the Moving Party currently had neck and low back pain, and suggested that the Moving Party's neck and low back pain was related to his in-service motor vehicle accident. The Board found that the evidence raised a reasonable possibility of substantiating the claim, as its credibility was required to be presumed. The Board found that new and material evidence had been received to reopen the claim of entitlement to service connection for neck and low back disabilities, and the petition to reopen was granted.

The Board proceeded to analyze the claim for service connection for neck and back disabilities on the merits. After carefully reviewing the record, the Board found that the preponderance of the evidence was against a relationship between the Moving Party's current neck and low back pain and the in-service automobile accident that occurred in April 1986. The evidence reviewed and cited by the Board in the July 21, 2010 decision included the service treatment records, the Moving Party's initial June 1986 claim for benefits, the Moving Party's June 2003 claim to reopen, VA treatment records dated from 2007 to 2010, an April 2009 VA examination report, a July 2009 private examination report, and the Moving Party's testimony at a May 2010 Board hearing. 

The Board noted that the service treatment records showed that in April 1986, two months prior to service separation, the Moving Party was in a car accident and was treated for neck and back pain. The Moving Party reported generalized back pain, worse in the lumbar area, and pain radiating from his neck down to his buttocks. He also reported muscle spasms, which were worse on the left side than the right. An X-ray study of the Moving Party's spine was negative at this time. 

Another April 1986 service treatment record reflects that a few days later the Moving Party reported that he was much better but still had generalized back pain with no radiculopathies. He also reported marked bilateral muscle spasms. The diagnosis was low back pain resulting from a motor vehicle accident. The Board indicated that the Moving Party's service treatment records were otherwise negative for diagnoses, treatment, or complaints of neck or back pain and a separation examination for the Moving Party's period of active service from November 1980 to June 1986 was not of record.

In the July 21, 2010 decision, the Board indicated that the Moving Party filed a June 1986 claim for service connection for injuries to the neck and back which was denied in a September 1986 rating decision because the Moving Party failed to report for a scheduled examination to assess whether he continued to have residuals from his neck and low back injuries. The Board notes that in an April 1988 rating decision, the RO continued the denial of this claim because the Moving Party did not submit any new evidence, including post-service treatment records showing that he continued to have neck and low back problems. The Moving Party again filed a claim for service connection for residuals of his motor vehicle accident in June 2003, but did not submit any new evidence, including post-service treatment records showing treatment for neck and back pain. 

The Board found that the earliest evidence of the Moving Party's current low back pain was a VA treatment record dated in June 2007 reflecting that the Moving Party complained of low back pain radiating to the left posterior-lateral leg to the calf. He also reported an occasional stiff neck. The Moving Party stated that he had experienced chronic low back pain since the 1986 automobile accident. The Board also noted that an August 2007 VA treatment record reported that an MRI of the Moving Party's lumbar spine showed disc narrowing at L5-S1 as well as anterior osteophytes, disc desiccation at L3-L4, and a minor disc bulge at L4-L5. The diagnosis was minimal degenerative changes. VA treatment records dated from September 2007 to April 2010 show continued complaints and treatment for neck and low back pain, which the Moving Party stated had been present for over 20 years. 

The Board discussed the April 2009 VA examination report and findings and indicated that the Moving Party reported intermittent neck pain with left lower extremity numbness associated with a sharp burning sensation and constant lower back pain. The examiner reviewed the service treatment records and post service medical records. The diagnosis was myofascial cervicolumbar syndrome secondary to degenerative joint and degenerative disc disease of the cervical and lumbar spine. After reviewing the claims file, including the Moving Party's service treatment records, and examining the Moving Party, the examiner opined that it was less likely as not that the Moving Party's current neck and back disabilities were due to the automobile accident in 1986. The examiner explained that at the time of the accident the Moving Party had no numbness or radiation of his neck or back pain. The examiner further noted that the Moving Party's current symptoms of left upper and lower extremity radiation of pain and numbness were not consistent with the whiplash type of injury sustained by the Moving Party in 1986. The examiner stated that more likely the Moving Party's neck and low back pain was secondary to the effects of aging, obesity, musculoskeletal deconditioning, and a genetic predisposition to developing degenerative spine conditions. 

The Board reviewed and discussed the July 2009 private examination report. The private examination report indicates that the Moving Party reported constant low back pain radiating to his left hip and leg, as well as numbness in his leg. The private examiner stated that he reviewed the Moving Party's written report of his past medical and surgical history and noted that X-rays of the Moving Party's lumbar spine revealed minor bone spurring and facet enlargement changes consistent with the Moving Party's age. The private examiner stated that the Moving Party described a "significant" injury in 1986 which had resulted in continuous lower back pain, stiffness, and locking episodes. The private examiner found that the Moving Party had myofascial pain consistent with an old muscle injury and the X-rays and MRI findings showed minor degenerative changes consistent with age and not likely causing pain. The private examiner stated that the Moving Party's current back condition was reasonably related to the 1986 automobile accident. 

In the July 2010 decision, the Board also considered the Moving Party's testimony at the May 2010 Board hearing. The Board noted that when the Moving Party was asked how long he had been treated for his back and neck pain, he responded that he was first given pain medication in 1986. He also stated that his back became stiff and locked up off and on, requiring the Moving Party to seek treatment at VA. He stated that every time he sought treatment at VA, he had to reopen this claim. 

In the July 21, 2010 decision, after review and discussion of the evidence, the Board found that the preponderance of the evidence was against the Moving Party's claim for service connection for neck and low back disabilities, the benefit-of-the-doubt rule did not apply, and service connection for disabilities of the neck and low back was denied. 

The Board finds that the July 21, 2010 decision was consistent with the law and regulations in effect at that time. The correct facts as they were known at the time were before the Board, and the Board correctly applied the statutory and regulatory provisions. 

The Board finds that the July 21, 2010 decision was supported by the evidence of record at that time. The Board finds that, based on the evidence then of record, reasonable minds could conclude that the Moving Party's current back and neck disabilities did not manifest in his period of service and did not manifest to a degree of ten percent within one year from service separation. There was competent and credible evidence at the time of the July 21, 2010 decision which supported this finding, and this evidence consisted of the Moving Party's service treatment records which showed treatment for neck and back pain but negative x-ray findings and a lack of x-ray findings of arthritis within the one year presumptive period. As noted in the July 2010 Board decision, the first evidence of arthritis substantiated by x-ray evidence was in 2007, almost 20 years after service. The Board's conclusion, in its July 2010 decision, that presumptive service connection was not warranted for neck and back arthritis was supported by the evidence of record at that time. Indeed, there was no competent medical evidence of record at that time which established that the Moving Party had arthritis of the neck and back in service or within one year of service separation. 

The Board further finds that, based on the evidence then of record, reasonable minds could conclude that the Moving Party's current back and neck disabilities were not related to the injury or other event in service. There was competent and credible evidence at the time of the July 21, 2010 decision which supported this finding, and this evidence consisted of the April 2009 VA examination report and findings. There was evidence on which the Board could and did rely with respect to all of its conclusions. Put another way, evidence then of record supported the Board's conclusion that the Moving Party's neck and back disabilities were not incurred in service and were not otherwise related to injury or other event in service. 

The Board wishes to make it clear that there was evidence of record at the time of the July 21, 2010 decision which supported the Moving Party's position. As noted above, the July 2009 private evaluation report indicates that the private physician associated the Moving Party's current neck and back disabilities to his injuries in service. Also, at the hearing before the Board in May 2010, the Moving Party stated that his neck and back disabilities began during service after the car accident in April 1986. It is clear in the July 2010 decision that the Board evaluated this evidence, but ultimately concluded that it was outweighed by evidence against each aspect of the claim, discussed above. The Board points out that a mere disagreement with how the Board evaluated the facts is inadequate to raise the claim of CUE. Luallen v. Brown, 8 Vet. App. 92, 95 (1995). When there is evidence both pro and con on the issue, it is impossible for a Moving Party to succeed in showing that the result would have been manifestly different. Simmons v. West, 14 Vet. App. 84, 88 (2000). In the present case, there is evidence which supports the findings of the Board in the July 21, 2010 decision. 

The Moving Party has advanced several contentions. First, he argues that the Board incorrectly applied the regulatory and statutory provisions as defined in 38 C.F.R. § 3.307, presumptive service connection, because the Moving Party's claim was filed within one year after service separation. See the April 2013 Motion. The Moving Party argued that the Board, in the July 21, 2010 decision, had conceded that the Moving Party was in a car accident in service in April 1986 two months before service separation and he was treated for back pain. The Moving Party argued that the Board conceded the receipt of the service connection claim within one year of service separation and still denied the claim for service connection, and this was CUE. 

The Board finds that the July 21, 2010 Board decision denying entitlement to service connection for neck and back disabilities on a presumptive basis under 38 C.F.R. § 3.307 was supported by the evidence then of record and was not undebatably erroneous. The Board did not incorrectly apply 38 C.F.R. § 3.307. The Board acknowledged that arthritis is a chronic disease that falls under presumptive service connection, where if this disease is manifested to a compensable degree within one year following service discharge, this disease may be presumed to have been incurred during service. 38 U.S.C.A. § 1101; 38 C.F.R. § 3.307, 3.309. A review of the evidence of record at the time of the July 21, 2010 decision shows that there was no competent evidence that arthritis of the neck and back manifested to a compensable degree within one year following service discharge to allow for a finding of presumptive service connection. Arthritis must be substantiated by x-ray findings. See 38 C.F.R. § 4.71, Diagnostic Code 5003, degenerative arthritis. The evidence of record at the time of the July 21, 2010 decision shows that x-ray examination of the back in service was negative. There are no x-ray findings of arthritis of the neck or back shown within the one year presumptive period. The Board properly noted that the claim for service connection for neck and back disabilities was received within one year from service separation. However, the Board further found that the evidence did not establish arthritis of the neck or back and presumptive service connection was not warranted. There was no competent evidence that arthritis manifested to a compensable degree within one year following service discharge to allow for a finding of presumptive service connection. Presumptive service connection pursuant to 38 C.F.R. § 3.307 requires evidence that the chronic disease in question, in this case, arthritis, to be manifest to a compensable degree within one year of service separation, not that the claimant file the claim for service connection within one year of service separation. The Board therefore did not incorrectly apply 38 C.F.R. § 3.307. There is evidence which supports the Board interpretation of the facts in the July 21, 2020 decision and there is a factual basis for the Board's determination that presumptive service connection is not warranted. Thus, the Board finds that reasonable minds could conclude that arthritis of the neck and back did not manifest within one year of service separation. 

The Moving Party is also arguing that the Board should have weighed the evidence differently and found that there was arthritis of the back and neck evidenced by complaints of pain. A disagreement as to how the facts were weighed or evaluated can never rise to the stringent definition of CUE. 38 C.F.R. § 20.1403(d). CUEs "are errors that are undebatable, so that it can be said that reasonable minds could only conclude that the original decision was fatally flawed at the time it was made." Russell v. Principi, 3 Vet. App. 310, 313-14 (1992). Thus, the Board finds that the Moving Party's argument that the evidence should have been weighed differently fails to establish CUE in the July 2010 decision.

Second, the Moving Party asserts that in the July 21, 2010 decision, the Board incorrectly applied 38 C.F.R. § 3.159 which pertains to VA's assistance in developing claims. The Board notes that a failure to fulfill VA's duty to assist the claimant with the development of facts relevant to his or her claim is not CUE. 38 C.F.R. § 20.1403(d). See also Luallen v. Brown, 8 Vet. App. 92, 95 (1995).

Third, the Moving Party asserts that in the July 21, 2010 decision, the Board incorrectly applied 38 C.F.R. § 3.156, new and material evidence. The Moving Party argues that the July 21, 2010 decision was CUE in that the Board found that the claim for service connection for neck and back disabilities was previously denied in final RO decisions and the Board considered 38 C.F.R. § 3.156, new and material evidence. 

The Board finds that in the July 21, 2010 decision, 38 C.F.R. § 3.156 was properly considered and applied. The Board finds that in the July 2010 decision, the Board correctly found that new and material evidence was needed to reopen the claim for service connection for disabilities of the neck and back. In the July 21, 2010 decision, the Board correctly set forth the procedural history of the claim and cited to the previous final decisions. As discussed above, in the July 21, 2010 decision, the Board reopened the claim for service connection for disabilities of the neck and back and decided the claim on the merits. 

The Moving Party appears to be arguing the April 1988 rating decision should have granted service connection for neck and back disabilities on a presumptive basis under 38 C.F.R. § 3.307. The Board notes that the April 1988 rating decision that denied service connection for disabilities of the neck and back was subsumed in the final July 21, 2010 Board decision. 38 C.F.R. § 20.1104. See Smith v. Brown, 35 F. 3d 1516 (Fed. Cir. 1994); Olson v. Brown, 5 Vet. App. 430 (1993) (when a determination of the AOJ is affirmed by the Board, the determination is subsumed by the final appellate decision); see also VAOPGCPREC 14-95. Only the Board decision which subsumes the RO decision may be reviewed for CUE (and only by the Board). VAOPGCPREC 14-95. Since the April 1988 rating decision is subsumed in the July 21, 2010 Board decision, the Moving Party's contentions that there was error in the April 1988 are moot. 

Further, even if the Board improperly applied 38 C.F.R. § 3.156 by requiring new and material evidence to be received before reopening the claim and considering the claim on the merits, it would have been harmless error since the claim was reopened and the claim was adjudicated on the merits. The Moving Party's application to reopen was granted and his request that the claim be adjudicated on the merits was granted. The Moving Party received the benefit he had sought. Thus, any such error would have been harmless error, not CUE which is outcome determinative error. See 38 C.F.R. § 20.1403(a); see Fugo, 6 Vet. App. at 43. In other words, even if the Board committed error in the July 21, 2010 decision by the incorrect application of 38 C.F.R. § 3.156, the result would not have been manifestly different since the claim was reopened. If it is not absolutely clear that a different result would have ensued, the claimed error cannot be deemed clear and unmistakable. 38 C.F.R. § 20.1403(c).

The Board notes that in the July 21, 2010 decision, on page 9, fourth paragraph, the Board indicated that new and material evidence had not been submitted, when in the previous paragraph and in the findings of fact and conclusion of law, the Board found that new and material evidence had been received and the claim was reopened. The Board finds that this is error but it is not an error that is outcome determinative. Thus, the outcome of the appeal would not have changed had this sentence indicated that new and material evidence has been submitted. This error did not affect the outcome of the appeal because the claim was still reopened. Thus, this error is not CUE. 

Fourth, the Moving Party asserts that in the July 2010 decision, the Board incorrectly applied 38 C.F.R. § 3.102, reasonable doubt. See the April 2013 Motion. The Moving Party is essentially asserting that the evidence at the time of the July 21, 2010 decision was in equipoise and the April 2009 VA medical opinion did not outweigh the July 2009 private opinion as to the relationship between he claimed neck and back disabilities and service, and service connection should have been granted. The Moving Party asserts that the Board's rationale for determining that the April 2009 VA medical opinion was more thorough, persuasive, and consistent with the record than the July 2009 private opinion was wholly irrelevant and the Board's rationale did not explain how the private opinion was less credible. 

The Moving Party is again essentially arguing that the Board, in the July 21, 2010 decision, should have weighed the evidence differently. A disagreement as to how the facts were weighed or evaluated is not CUE. 38 C.F.R. § 20.1403(d). Further, in the July 21, 2010 decision, the Board's findings that the April 2009 VA medical opinion was more probative than the July 2009 private opinion is a reasonable interpretation of the evidence. There is evidence which supports the Board's interpretation of the facts. The Board finds that reasonable minds could conclude that the April 2009 VA medical opinion was more probative and outweighed the July 2009 private opinion. 

Thus, the Board cannot say that it was "undebatable" that the Board's decision in July 21, 2010 contained error in failing to grant service connection for disabilities of the neck and back. There was evidence on which the Board could and did rely with respect to all of its conclusions. Put another way, evidence then of record supported the Board's conclusion that the Moving Party's neck and back disabilities were not incurred in or related to service and the claimed disabilities did not manifest by arthritis to a compensable degree within one year from service separation. The Moving Party has not presented evidence of CUE in the Board's adjudication of the appeal in the July 21, 2010 decision, which, had it not been made, would have manifestly changed the outcome of the decision. Therefore, the Board denies the motion to revise the Board's July 21, 2010 decision. 

In sum, the Moving Party has not established, without debate, that the correct facts, as they were then known, were not before the Board in July 21, 2010; that the Board ignored or incorrectly applied the applicable statutory and regulatory provisions existing at the time; or that, but for any such alleged error, the outcome of the decision would have been different. As such, the Moving Party has not met the criteria for reversing or revising the Board's July 21, 2010 decision on the basis of CUE.





ORDER

The motion to revise the Board's July 21, 2010 decision on the basis of CUE is denied. 


 ____________________________________________
 MATTHEW W. BLACKWELDER 
 Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs